The Commonwealth of Pennsylvania ex rel. the Attorney General *v.* William Calhoun, Chas. Lynch, B. Mitchell Newbold, and Charles K. Swift, Appellants.

*Deeds—Dedication of lots to public use.*

An owner of land divided it into building lots, and recorded a plan of the same which showed certain lots laid out in the middle of the streets, or as a part of the streets. The plan was printed, and building lots were sold upon the strength of it, and purchasers of lots were informed that the park lots had been dedicated to the public for use as a park. The park lots were not improved, no walks were laid, and the grass was not kept cut, and although different in shape they differed little in appearance from

the unimproved building lots around them. Some years after the plan was recorded, a judgment was entered against the owner, and at the sheriff's sale which followed, notice was given by a committee of lot owners that the defendant in the execution did not own the lots, but no other particulars were stated in the notice. The purchaser at the sheriff's sale bought all the lots levied upon and, in his deed from the sheriff, the so-called park lots were described as grass plots. *Held*, that the purchaser of the park lots will be perpetually enjoined from any lease, possession or occupation of them which will in any way interfere with or obstruct the citizens of this commonwealth in the free and uninterrupted use and enjoyments of said lots and every part thereof as public parks.

Argued Feb. 10, 1898. Appeal, No. 459, Jan. T., 1897, by defendants, from decree of C. P. Delaware Co., March T., 1895, No. 6, on bill in equity. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction to restrain defendants from exercising any ownership in three lots of ground in Norwood.

The case was referred to David F. Rose, Esq., who reported as follows:

The three lots of ground mentioned in the bill of complaint in this case are parts of a large tract of land which was owned by John Cochran in 1872 and 1873. The particular part of this tract in which these three lots are located was purchased by him from Thomas H. Gesney, by deed dated April 1, 1873, duly recorded. Mr. Cochran was a well-known and successful real estate operator. He at once laid out this large tract of land in building lots, with streets and alleys. A plan was made in usual form, showing the location of the lots, etc., including the three lots of ground mentioned in this bill, which, for convenience, we shall hereafter designate as the park lots, the name by which they have been known at Norwood. Prior to this time this tract of land had been used as farm land and was surrounded by farms. These park lots were intended by Mr. Cochran for public use as parks. No deed of dedication was then made, nor has one been made since. As soon as the tract had been properly laid out, public sales were held, at which these lots, other than the park lots, were offered for sale. At these sales printed plans of the tract showing the streets, etc., and these lots were distributed with a lavish hand. There appear to have been at least three plans made of this tract, differing only as to minor de-

tails. In all of them the park lots appear without change of shape, dimensions or location. There were a number of public sales held, at all of them it was announced by Mr. Cochran that these park lots had been dedicated to the public for use as parks. This announcement was made repeatedly and was generally understood. The first sale was held on May 28, 1873. Many lots were sold at these public sales, and many were sold at private sale. To the purchasers at private sale the same information was given by Mr. Cochran as to the dedication of these park lots. So that it became a matter of public information at Norwood that these park lots were for public use as parks. These sales were extensively advertised in Philadelphia and Delaware county papers and by hand bills.

Prior to these sales trees had been planted along the sidewalks as laid out; and trees, evergreens and shrubs on the park lots. It does not appear that trees were planted elsewhere. These park lots were used for Fourth of July celebrations, occasionally for fairs and church festivals. This, of course, was only in the summer, and not often in a single season. No public improvements were made on these park lots, no walks were laid, the grass was not kept cut, except by vagrant cattle : in these things they differed little in appearance from the many unimproved lots lying around them. The shrubs were destroyed, the evergreens and maples remained. The public character of the park lots was recognized by the township assessors, who made no assessment of them for purposes of taxation.

No copy of any plans made was recorded until April 5, 1880, when a plan was recorded in deed book T, No. 4, page 619.

The land scheme failed. In April, 1878, John M. Broomall obtained judgment against John Cochran for $2,000, and this judgment, obtained on a judgment note, was marked to the use of George Broomall, a fi. fa. was in due course issued on this judgment; and the park lots, inter alia, condemned. In the condemnation proceedings they are described as follows : " Also, all those three certain irregular lots or pieces of ground, laid out and designated in the aforesaid plan of Norwood as grass plots," etc. On June 11, 1883, these park lots, inter alia, were sold under an execution on said judgment as the property of John Cochran, and were purchased by George Broomall, the

plaintiff in the execution, who, with counsel, was present at the sale. Prior to the sheriff's sale a number of the citizens of Norwood, alarmed at the danger of losing the park lots, having learned of the execution, held one meeting, or more, and organized for the purpose of protecting the rights of the public in the park lots. William Calhoun, one of the defendants in this case, took an active part in these meetings, and contributed to the fund raised to employ counsel. Competent counsel was employed, who prepared a notice of the claim of the public to the use of these park lots, which notice was read at the sheriff's sale by Mr. Galloway, and prior to the sale of the park lots. This notice was not produced at the hearing, nor does it appear what it contained, except it was a notice that John Cochran did not own the lots. Mr. Calhoun had full knowledge of the dedication of these park lots to the public, and had himself, when endeavoring to sell lots, pointed them out to prospective purchasers as for public use. A short time prior to the sheriff's sale, George Broomall had visited these park lots with his counsel. As stated, Wm. Calhoun had full knowledge of the dedication of the park lots prior to his purchase from George Broomall. A deed for these park lots, inter alia, was delivered by the sheriff to George Broomall on June 11, 1883. In this deed the park lots are described as " three irregular lots or pieces of ground, laid out and designated on the aforesaid plan (referring to the plan of Norwood), for grass plots," deed book T, No. 4, page 619. On September 15, 1891, George Broomall sold these same three lots to William Calhoun, above mentioned, and on September 15, 1893, the said William Calhoun sold a part of one of them to Charles Lynch, B. Mitchell Newbold and Charles K. Swift, trustees. All of which deeds were duly recorded.

Prior to the sale, Mr. Galloway gave notice of the public right to Mr. Lynch, one of the trustees of the church, for which the purchase was made. Mr. Lynch said they were going to get the title insured.

The legal principles governing this case are simple enough; their application however is not so simple; that the judgment of George Broomall bound only the actual interest of John Cochran in the lots in dispute; that so far as the sheriff's sale was concerned he stood in no different relation to the property.

than any other purchaser by reason of his judgment; that a purchaser buys subject to all equities of which he had notice; that whatever puts a party upon inquiry amounts to notice, provided the inquiry becomes a duty and would lead to the discovery of the requisite facts by the exercise of ordinary diligence, and that inquiry becomes a duty from such circumstances as would cause a reasonably prudent intending purchaser to make it. These are well established and familiar principles governing the matters in question.

On the finding of the referee as to the dedication of these lots, and that they were dedicated was not denied by the defendants, the only questions to be decided are, had George Broomall notice of such dedication prior to his purchase; or had he such knowledge or information as to put him on his guard and impose upon him the duty of making inquiry as to the uses and purposes of these lots. Such legal notice or knowledge as he had, as far as the evidence shows, came from three sources:

1. The papers on file in the recorder's office.

2. The location and appearance of the lots themselves.

3. The notice given by Mr. Galloway at the sheriff's sale of the park lots.

By legal inference he was familiar with the recorded papers; as a fact he actually viewed the lots a short time before the sale. Do the plans or the lots themselves indicate their uses, or is there that about them to put an intending purchaser upon inquiry? That these lots were of a character different from the other lots the plan clearly shows.

Their shape, unadapted for building lots, their peculiar location in the middle of the street, indeed they may well be taken to be a part of the streets, from the fact that in front of all the numbered lots on the plan filed, there appears to be a sidewalk, lined with trees in most instances; no such markings appear on these lots which so far as the plan shows might well indicate that these park lots are a part of the streets in which they are located. Winona avenue lies on both sides, or more correctly on all sides of two of these lots, and Huron avenue on both sides of the other. They seem to be a part of the streets in which they are located. Such lots are common in towns, and are usually used for public purposes.

A visit to the lots themselves added very little information to the intending purchaser. No one was in possession of whom to make inquiry. While the public uses to which they were put might indicate the public understanding as to their character, there was little about their use to warn an inquirer. For nine months in the year the lots were not used at all for park purposes; open lots were plenty, these would grow in importance as the open lots were built up; eventually they might become necessary; trees had been planted on these lots, maples and evergreens and also shrubs, maples only on the sidewalks; it does not appear that trees had been planted at all except upon these park lots and the sidewalks. After all, therefore, a visit would show little more than an inspection of the plan. No evidence of care, no seats, no fountain, no protection from stray cattle, not even the familiar "keep off the grass" sign, simply neglected open lots in the middle of the streets.

Now was the plan and the fact that the lots were laid out on the ground in conformity thereto sufficient to put a reasonably prudent purchaser upon inquiry or to suggest that they might be intended for public use? While the public use probably tended to establish the fact of an acceptance of the dedication, it was too intermittent to warn any one of the fact; that no taxes had been levied on them might go to show their acceptance by the public authorities, it would be no notice to a purchaser unless brought home to him; there was evidence, too, as to the meaning of the curves and marks on these park lots as indicating a public use; as being marks used by engineers for that purpose, the evidence, however, was not satisfactory; it certainly was not convincing to the referee.

To the referee the general appearance and location of these lots indicates clearly, as stated, that they were intended for different purposes than the numbered lots. Such lots very often, if not usually, appear on the plan of large tracts thrown open for improvement, and are usually intended and marked for public use or public enjoyment. The fact that they are located in the middle of the streets would indicate that they might be intended for a use of similar character. In Schuchman v. the Borough of Homestead, 111 Pa. 48, the court says: "It is reasonably certain that the Homestead Company dedicated the land to the public use and that a number of persons purchased

lots expecting to enjoy the resulting advantage. However, nothing in the plan or in the course of title, or on the ground, was a warning of such dedication," and therefore the purchaser acquired good title.

A reference to the plan in this case shows the lots in dispute in the case cited, and there is certainly nothing to indicate a public use at all different from that to which the other lots were devoted. The appearance on the plan of the park lots in the case in hand is very different from that of the disputed lots on the plan in the case cited.

If the names of the streets did not appear on the plan filed would it be said that there was nothing on it to indicate that these long narrow strips were dedicated to public use if no lots had been sold?

As a fact, the plan shows a short strip running from Seminole avenue to Winona avenue, not named as a street on the plan. He would be a foolish man who would buy this strip without inquiry as to its use, if no lots had been sold on it, and so with all the alleys on the plan, not an alley is so marked, nothing to indicate their use except the general appearance, location and relation to the lots. Yet who would buy them because they are not marked as alleys, where no lots had been sold as abutting thereon?

If these park lots had been merely odd places left by the laying out of streets by public authority, or on a private plan for that matter, a different conclusion might be reached, as in that case their position and odd and irregular shape would result from the street plan, and would be accounted for. They would be bounded by different streets, would not be in the middle of a street, not a part of a street. It is apparent that these park lots are placed designedly that their peculiar shape and position were matters of intention, and that the streets at the points where they are situated were made to conform with them and accommodate them. They are clearly marked for a special purpose, and their location in the middle of a street, as a part of the street itself, clearly intended for public travel, might well indicate a public purpose for the lots as well.

For the reason stated the referee is of the opinion that the facts shown by the plan and the lots themselves were sufficient to put an intending purchaser upon inquiry. And that proper

inquiry would have disclosed the fact that the lots had been dedicated to public use. The question is not as to the sufficiency of the plan and the location of the lots to prove a dedication to public use, only to their sufficiency to suggest it, to provoke inquiry. "Where there is an apparent dedication of land to public use the purchaser of the legal title could not defeat the right of the public:" Schuchman v. the Borough of Homestead, 111 Pa. 55.

In this case there was nothing on the plan or on the ground to warn the intending purchaser. In the case in hand the referee is of opinion as stated that the location of the park lots on the plan and as actually laid out on the ground, as in the middle of the streets, or as a part of them, the planting of trees on them, their peculiar shape and position indicated dedication to public use. While it is true there was no one in possession, of whom to inquire, inquiry might have been made of John Cochran, or of the public authorities of the township, or of neighboring owners ; any of these would have given all the information needed ; the right of the public once suggested, the inquiry should have been made, and could have been made easily in a direction likely to elicit the desired information. It may well be that the reasons given would fall far short of the evidence necessary to prove a dedication, but they certainly indicate it, just as much as the unnamed street and unnamed alleys indicate a street and alley.

Although, as naïvely said by the counsel of the purchaser at the sheriff's sale, who, with his client, visited these lots a short time before the sale by the sheriff, "they were not looking for equities," it was nevertheless his duty to look for them, at least he should not have shut his eyes to them. It is the purchaser who must beware. He cannot stick his head in the sand and then say he did not see the thing he would have seen had he looked about him.

The third source of notice to George Broomall, of the equity of the public, was the notice given by Mr. Galloway at the sheriff's sale. While, as a matter of fact, this notice probably contained a full and complete statement of the claim of the public to these park lots, having been prepared by competent counsel, and would, if fully proved, be an end to this case of itself, as proving notice of the public use, we cannot put

more into it than it was proved to contain, according to the testimony of Mr. Galloway, the only witness of the plaintiff on this point, who said the notice was that " John Cochran did not own these lots." A notice could not well contain less, nor did it necessarily follow that a good title would not pass, as John Cochran might have conveyed the lots after the entry of the judgment; nor was it strictly true, in point of fact, as John Cochran did own the lots, subject to the public use as parks.

Of the many cases on the sufficiency of notice, contained in the reports, the referee can find none containing so little information or warning as this. The case that came nearest to it, perhaps, is that of Barnes v. McClinton, 3 P. & W. 69. The notice in that case contained the name of the adverse owner, and the significant statement that the purchaser would buy a lawsuit.

The notice of Galloway contained no such ingredients, so far as proved, and so far as we can deal with it. The notice was purely negative. It did not give the name of the adverse claimant nor the nature of the claim; and as stated, might well be true and still not affect the title of the purchaser. The referee is, therefore, of opinion that the notice at the sheriff's sale, as proved, was not sufficient to put the purchaser on inquiry.

In the deed from the sheriff to George Broomall the lots in question are described as three irregular lots or pieces of ground laid out and designated on the aforesaid plan of Norwood for grass plots. None of the other lots conveyed by this deed are described as grass plots, they are simply described as lots. This falls in line with the view of the case herein taken, that there was that about these lots, as marked on the plan and laid out on the ground, that they were intended for different uses than the other lots. Mr. Broomall or his counsel thought they were intended for use as grass plots when he prepared his description of them for the sheriff in the writs issued on his judgments. It does not seem that it would have been exercising a superabundance of caution to have inquired if they were laid out and designated as grass plots for public or private use, when their peculiar situation in the middle of the streets is considered and their other features hereinbefore remarked upon. While the trustees had notice before their purchase had been completed,

and while Wm. Calhoun had full knowledge of the right of the public in the park lots before he purchased, their title of course hangs upon that of George Broomall, who could convey to them just as good a title as he owned.

The right of Wm. Calhoun to assert an absolute ownership of the park lots after he had represented them to be public parks to persons to whom he was endeavoring to sell lots was not considered at the hearing, probably because this suit is not at the instance of the purchaser to whom representations were made.

The referee being of opinion as stated, that the location, general appearance, etc., of the park lots on the plan filed and on the ground were sufficient to put an intending purchaser upon inquiry as to the rights of the public in the park lots, recommends that the prayer of the complainants be granted, and that the defendants be restrained from use or occupation of said lots that will interfere with the right of the public to use the same as public parks, and that the costs of this proceeding be paid by said defendants.

Exceptions to the report of the referee were dismissed by WADDELL, P. J., of the 15th judicial district, specially presiding, and the following decree entered:

And now, April 8, 1897, the parties in the above case, having been duly heard with their witnesses, it is hereby ordered and decreed that the said defendants, William Calhoun, Charles Lynch, B. Mitchell Newbold and Charles K. Swift, and each and every one of them, be perpetually enjoined and restrained from any use, possession or occupation of those three certain irregular lots or pieces of ground laid out and designated in a certain plan of Norwood recorded in the office for recording deeds, etc., in said county of Delaware, in deed book T, No. 4, page 619, (two of them being in Winona avenue, south of the Darby and Chester turnpike, and the other of them lying in Huron avenue between the aforesaid turnpike and Mohawk avenue), that will, [in any way, interfere with or obstruct the citizens of this commonwealth in the free and uninterrupted use and enjoyments of said lots and every part thereof as public parks], and that they and each and every of them be perpetually enjoined from the erection of any building or buildings on said lots or any of them.

*Errors assigned* were in dismissing exceptions to report of referee.

*W. B. Broomall,* for appellants.—An owner may dedicate his property to uses not unlawful, either public or private, and no change can be made except by lawful process or the assent of those for whom the dedication was made : Davis v. Sabita, 63 Pa. 90 ; Washburn on Easements and Servitudes (3d ed.), 220.

Absence of numbering or even a difference in numbering is no evidence of a dedication : Schuchman v. Homestead Boro., 111 Pa. 48.

The referee finds that, from the situation and irregularity of these lots, the purchaser was bound to make further inquiry. The proper place to make inquiry is by an examination of the public records : Hill v. Epley, 31 Pa. 336 ; Schuchman v. Homestead Boro., 111 Pa. 48.

There was nothing on the record as to the dedication prior to the rendition of the judgment, and in this respect the case is ruled by Uhler v. Hutchinson, 23 Pa. 110.

*Edward P. Bliss,* for appellee.—Where streets are laid out and opened in order to afford access to lots and facilitate their sale, they may be said in common language to be dedicated especially to the lot owners to whom they are of the most importance, but it is well settled that they are also dedicated to the public, and vest in the commonwealth : Schenley v. Com., 36 Pa. 62 ; Boro. of Birmingham v. Anderson, 48 Pa. 253 ; In re Pearl St., 111 Pa. 565 ; Phila. & Trenton R. R., 6 Wharton, 44 ; Penny Pot Landing, 16 Pa. 79 ; Rung v. Shoneberger, 2 Watts, 23 ; Com. v. Bowman, 3 Pa. 202 ; Com. v. Alburger, 1 Wharton, 468 ; Com. v. Rush, 14 Pa. 186 ; New Castle v. Raney, 130 Pa. 562.

Whatever puts a man upon inquiry is equivalent to notice of any fact which such inquiry would naturally have disclosed. The description of the property as having been " laid out for grass plots " and as being " in " certain streets was, standing alone, evidence of a dedication, and constituted notice of it. Hanson v. Eastman, 21 Minn. 509 ; Indianapolis v. Kingsbury, 101 Ind. 200 ; Maywood County v. Maywood Village, 118 Ill. 61. This was certainly notice to intending purchasers to be-

ware, and if they did not find it sufficiently explicit it became their duty to inquire further: Hill v. Epley, 31 Pa. 331; Barnes. v. McClinton, 3 P. & W. 67; Ross v. Baker, 72 Pa. 186.

The question whether land has been dedicated to public use is one of intent. No particular form is necessary to make a. dedication; a grant is not required; it may be made by parol. and proved by parol. All that is necessary is the assent of the owner, and the fact that it has been used by the public: May- wood County v. Maywood Village, 118 Ill. 61; 5 Am. & Eng. Ency. of Law, 416; Com. v. Moorehead, 118 Pa. 344; Dovas- ton v. Payne, 2 Smith Leading Cases, 142; Schenley v. Com., 36 Pa. 29; Scott v. Des Moines, 64 Iowa, 444; Ross v. Baker, 72 Pa. 186; Sill v. Swackhammer, 103 Pa. 7; Phila. & Tren- ton R. R., 6 Wharton, 44; Reed's App., 13 Pa. 475.

PER CURIAM, February 28, 1898:

The decree of the court below in this case is affirmed on the findings of fact and conclusions of law contained in the report. of the referee.