# Bishop's Estate.

*Partition—Orphans' court—Jurisdiction—Church law.*

Where an owner of land grants the land to a church, with a reversion to himself or his heirs should the church cease to use the building and abandon the land, and the church splits into two factions, each claiming to be the true body, and one of them passes a resolution of abandonment, the heirs of the grantor cannot maintain partition in the orphans' court where it appears that the faction of the church which had not abandoned the land was in actual possession of it claiming title adversely. In such a case the title of the heirs depends on the fact of abandonment, and this must be established in ejectment before partition will lie.

*Partition—Orphans' Court—Title and possession—Adverse claim.*

In partition in the orphans' court where the title and possession are prima facie in common, a mere claim of adverse title by one party will not be sufficient to suspend the proceedings, but there must be either some defect pointed out in the petition, or some facts set up showing an adverse title or adverse possession. Unless some such facts appear in the pleadings,

the court will look into the evidence so far as to see that there is a real question of title or possession in controversy, and not a mere naked assertion.

Argued June 3, 1901. Appeal, No. 15, May T., 1901, by M. D. Bishop, Laura V. Bishop and Cornelius Wolfort, trustees, from decree of O. C. Adams Co., confirming the inquest in partition in the Estate of Philip Bishop, Deceased. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Petition for partition.

Swoope, P. J., found the facts to be as follows:

Philip Bishop, Sr., being seized, in fee, of a parcel or lot of ground upon which a small church was erected, situate in Germany township, Adams county, Penna., on Jaunary 28, 1826, by deed duly executed and recorded, sold and conveyed the same to Philip Bishop, Jr., Christian Bishop, Jacob Bishop and Jacob Shank, trustees, in trust for the use, intent and purpose following:

The said church " to be hereafter known by the name of the United Brethren in Christ in the United States."

The said trustees or a majority of them, their heirs or successors to hold the same " in trust, for the use, intent and purpose of the United Brethren in Christ in the United States forever for a house and place of worship for the society aforesaid, yet nevertheless, to be free for any other society of Christians to worship therein and hear the word of God preached therein at all times, when not occupied by the society aforesaid."

The deed then provides that the trustees shall have exclusive control of the said church and property to keep the same in repair, etc., provides for the appointment of trustees in the event of death, removal or resignation, and then concludes: " Provided always nevertheless, that if it should happen in process of time that the said church should be deserted, and the congregation broken up for some length of time so that no ministers of that society aforesaid should attend to preach therein, nor hearers attend to worship therein, but should be abandoned by said society, that then and in that case, but not otherwise, as well the lot of ground aforesaid as the church aforesaid and appurtenances, shall revert back and be again fully vested in the said Philip Bishop, his heirs and assigns, as fully

as if this deed had never been executed, anything to the contrary herein contained notwithstanding."

Philip Bishop, Sr., died in the township of Germany aforesaid, in 1832, testate, and by his will his three sons, Philip, Christian and Jacob, were appointed executors, who settled and distributed the estate in their hands in accordance with their father's will.

On December 6, 1900, John Amos Bishop, one of the four children of John Bishop, deceased, who was one of the nine children of Philip Bishop, Sr., deceased, and claiming to be entitled to the one fourth of the one ninth of above property, presented his petition to the orphans' court, asking that an inquest be awarded to make partition of the same, for the reason that said church has been abandoned by the United Brethren in Christ in the United States, by formal action of said society; by its ministers, hearers and worshippers, and has reverted to Philip Bishop, Sr., his heirs and assigns, as provided in said deed of trust.

The petition set out all the names of the heirs of Philip Bishop, Sr., deceased, and their addresses, as far as known, some of them being minors.

The petition was also accompanied with a declaration in writing of six persons, that they were all the remaining worshippers of the Society of the United Brethren in Christ, who were accustomed to attend preaching and worship in said church, and who admitted the abandonment of said church by the said society and their entire willingness to have the heirs of Philip Bishop, Sr., deceased, take possession of the same " according as they have the right to do."

Upon this presentation inquest was awarded.

On February 2, 1901, M. B. Bishop, Laura V. Bishop and Cornelius Wolfort, three of the then trustees of said property, filed an affidavit asking the court not to confirm the inquest, and denying all the allegations of the petitioner.

On the same day, February 2, 1901, the affidavit of J. L. Grimm, presiding elder, Baltimore district, Pennsylvania Conference, United Brethren in Christ, was filed, asking the court not to confirm the inquest, because the United Brethren Church in Littlestown (property in dispute) is sometimes regarded as belonging to the Baltimore district, of which he is the presiding

elder, and sometimes regarded as belonging to the Chambersburg district, of which Rev. A. R. Ayers, of Carlisle, is the presiding elder. That the said church could not be properly abandoned without his concurrence or knowledge, and that it was not abandoned.

On February 14, 1901, considerable testimony was taken in support of petition for inquest, at which time Charles J. Delone and William P. Quimby, Esquires, were present representing exceptors and cross-examined witnesses. No testimony was taken on behalf of exceptors.

The court entered a decree confirming the return of inquest.

*Error assigned* was the decree of the court.

· *C. J. Delone*, with him *Wm. P. Quimby*, for appellants.—The orphans' court cannot decree partition where one of the heirs claims to hold one of the purparts of the land in severalty: Edll's Estate, 6 Pa. 457.

Partition is made of lands of tenants in common, when their possession is common; ejectment is the remedy when the possession of one is adverse to the others : Bigley et al. v. Jones, Trustee, 114 Pa. 510; Law v. Patterson, 1 Watts & Serg. 184.

When it appears on a petition for a division of an intestate's estate, that the intestate did not die seized, but that the premises are in the possession of another, claiming to hold adversely, it is the duty of the orphans' court to refuse the prayer of the petitioner, and put the party to an action of ejectment to recover the possession: McMasters v. Carothers, 1 Pa. 324; Trickett on Partition, 259 ; Longwell v. Bentley, 23 Pa. 99.

*William* and *William Arch McClean*, for appellee.—Philip Bishop, Sr., died seized of a contingent remainder or reversion, and not having altered the disposition of the same by his will, he died intestate as to the same, and it passed to his heirs at law by descent. It necessarily follows from the above conclusion that the orphans' court has jurisdiction, as that court has unquestioned jurisdiction of all estates taken by descent. Schlichter v. Keiter, 156 Pa. 119, decided that the liberal branch of the church had the legal title to all church property.

The question of the abandonment was not a question of fact

to be judicially determined or adjudicated by the court in the present case. The abandonment had been established by the act of the parties to the trust before the petition for an inquest was asked, so that such abandonment could be alleged as a fact therein and a decree made accordingly: Welch's App., 126 Pa. 302.

The court may hear evidence upon the claim asserted, and if it be insufficient to justify submission to a jury, may confirm the inquest and proceed with the partition: McCorkle's Est., 184 Pa. 626; Welch's App., 126 Pa. 297.

OPINION BY MR. JUSTICE MITCHELL, October 11, 1901:

The court had no jurisdiction to make the decree appealed from. The controversy reduced to its essentials is this: Bishop, the grantor, conveyed the land to trustees for a church, with a reversion to himself or his heirs should the church cease to use the building and abandon the land. The church split into two factions each claiming to be the true body, and one of them passed a resolution of abandonment. Thereupon one of the heirs filed this petition for partition. The petition was fatally defective if demurred to, first for failure to aver possession in the heirs, and secondly for failure to aver abandonment by the trustees, in whom the legal title was. There was no demurrer however, but the trustees filed objections by way of answer, setting up first, title in themselves, regularly deduced from the grantor, secondly, actual possession, and thirdly, a denial of abandonment. The court then proceeded to determine that the church party desiring to abandon, was the true body and thereupon decreed partition.

As already said this was outside of the court's jurisdiction. The appellants were in possession, under claim of title which was clearly adverse. Non tenent insimul. The appellee alone, or all his coheirs together could not re-enter and oust the trustees, on their contingent reversion. Their title depended on the fact of abandonment, and must be established in ejectment before partition would lie.

The learned court below relied on the decision in Schlichter v. Keiter, 156 Pa. 119, that the so-called liberal party was the true church body. It may prove to be so when properly adjudicated, but it is res inter alios acta in this case. The appel-

lants have not had their day in court on the question and their possession cannot be disturbed until they have had it.

It is said that the orphans' court will look into a title set up to defeat partition, so as to see if it is really adverse. Within certain narrow limits this may be conceded. But it is not the rule. Welch's Appeal, 126 Pa. 302, and McCorkle's Estate 184 Pa. 629, are mainly relied on. But both of these were admittedly cases of tenancy in common. In the first there was a claim of adverse possession and ouster by one cotenant, but no evidence produced which could be allowed to go to a jury in ejectment. In the other case the claim was for a larger interest in the common property than the petitioner had averred in the claimant, but no evidence at all was produced to support it. In both the principle was applied that in partition in the orphans' court where the title and possession are prima facie in common, a mere claim of adverse title by one party will not be sufficient to suspend the proceedings, but there must be either some defect pointed out in the petition, or some facts set up showing an adverse title or adverse possession. Unless some such facts appear in the pleadings, the court will look into the evidence so far as to see that there is a real question of title or possession in controversy, and not a mere naked assertion: Wistar's Appeal, 115 Pa. 241.

In the present case not only is the petition defective, but both title and possession of appellants are adverse. Even in ejectment plaintiff could only recover by proof of abandonment.

Order reversed. All costs to be paid by appellee.