## APPEAL OF DANIEL M. WELCH.

### [ESTATES OF GEORGE AND FRANKLIN WELCH, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF CLEARFIELD COUNTY.

Argued April 24, 1889—Decided May 6, 1889.

1. In proceedings in the Orphans' Court for partition of real estate, if the husband of an heir have been absent and unaccounted for for over seven years, the omission of his name as a party interested from the petition and of any return of notice of the inquest upon him by the sheriff, will not affect the validity of the inquest.

2. When, in such proceeding, the record shows due notice to heirs that the inquest would be held on a day certain, but the sheriff makes return that the inquest was held on a subsequent day, and sets forth that "the parties in interest were severally warned and as many as chose being present," due notice of the adjourned meeting will be presumed, in the absence of evidence to the contrary.

3. The denial of the tenancy in common by an heir of the decedent on the return of the writ of partition, with an assertion of title in himself by adverse possession, will not be sufficient to require a suspension of the proceeding, but the court may hear evidence upon the claim asserted and if it be insufficient to justify submission to a jury, may confirm the inquest and proceed with the partition.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 394 January Term 1889, Sup. Ct.

On October 18, 1888, Maria J. Welch presented her petition setting forth that she was a daughter and devisee of George Welch, Sr., and sister of Franklin Welch, both late of the township of Lawrence, deceased; that the said George Welch, Sr., died about June 23, 1860, seised in his demesne as of fee of a tract of land in said township, containing 129 acres more or less, and by his last will devised the said tract of land, share and share alike, to his son Franklin Welch and his daughter, the petitioner, charged however with the support of his widow, since deceased, during her life; that afterwards, on or about April 17, 1883, the said Franklin Welch died intestate, seised in his demesne as of fee of the undivided one half part of said tract of land, and leaving to survive him, as heirs at law, his mother, Jane Welch, since deceased, and a brother and sisters, as follows, to wit: Sarah Cole, widow of Jacob Cole; Eliza B. Marshall, wife of Joseph M. Marshall; Asenath L. Schermerhorn, who was the wife of Curtis Schermerhorn; Anna M. Welch, Daniel M. Welch, and Maria J. Welch, the petitioner; that under the will of George Welch, Sr., deceased, the petitioner was entitled to have the one half part of said tract, and under the intestate laws of the commonwealth, as an heir of said Franklin Welch, she was entitled to have one sixth part of the other half of said tract, etc.; praying for a writ of partition. An inquest of partition was awarded as prayed for, twenty days notice of the time and place of meeting to be given to all parties interested, personally or by writing left at their respective places of abode, and also by publication once a week for four weeks previous to the meeting of said inquest, in a designated weekly newspaper published in the county.

On November 8, 1888, service was accepted "of notice of inquisition to be held on within described premises on November 24, 1888, at 10 o'clock A. M.," as appeared by paper filed signed by Daniel M. Welch, and all the other persons set forth in the foregoing petition as parties interested, except Curtis Schermerhorn.

On December 5, 1888, the sheriff made return to the writ of

an inquest indented and taken on the premises on November 30, 1888, "before" etc., "who say that having been taken by the said Jesse E. Dale, High Sheriff, aforesaid, in his own proper person, to the premises described in the writ to this inquisition annexed, and the parties in interest having been severally warned and as many as chose being present, they do find," etc., the tract of land being divided into two purparts, and so appraised.

On December 6, 1888, Daniel M. Welch excepted to the confirmation of the sheriff's return, assigning the following grounds:

1. That no notice of the time and place of the meeting of the inquest was given to the heirs as required by law.[2]

2. That no notice of the proceeding in partition, and of the time and place of meeting of the inquest was given to Curtis Schermerhorn, husband of Asenath L. Schermerhorn, who is a non-resident of the state of Pennsylvania, by publication as required by the act of assembly and the order of court.[3]

3. The title to the undivided half of said land as set forth in the petition of Maria J. Welch, as belonging to her by virtue of the will of George Welch, her father, is disputed by Daniel M. Welch, who claims the same by adverse possession, he having claimed, improved and occupied the same for over twenty-five years as his own.[4]

4. The inquest was improperly awarded, as the title to the land in dispute must first be settled before the writ will lie.[5]

Depositions of witnesses taken upon rule granted were filed, and after argument thereof, the court, KREBS, P. J., on February 23, 1889, filed the following opinion:

So much of the exceptions to the proceedings which involves the regularity thereof, and the sufficiency of notice to divest the title and interest of the husband of Mrs. Schermerhorn, one of the heirs and parties in interest, cannot prevail against the return made by the sheriff. The evidence discloses the fact that this husband has been absent, and his absence unaccounted for, for a period far exceeding seven years. The rule is now well settled, for most judicial purposes, that the presumption of life, with respect to persons of whom no account can be given, ends at the expiration of seven years from the time they were last

known to be living: Best on Presumptions, § 140; 2 Greenl. Ev. § 278; Esterly's App., 109 Pa. 222. And so much of the exceptions as involves the regularity of the proceedings, because the name of the husband of Mrs. Schermerhorn was not contained in the petition for the writ of partition, and the absence of any return of service by the sheriff upon him, is overruled.

The other important question raised by the exceptions involves the right to partition at all; because it is alleged on the part of the exceptant, Daniel Welch, through his counsel, that there is not such a holding in common of the property described in the petition and writ of partition, that the law requires, in order to permit partition to be made. It is true that the authorities declare that an adverse holding of the property by any one, for a period of time however short, before the institution of the proceedings in partition, will be effectual to defeat the proceedings. The proceeding in partition turns entirely upon the point of all the parties holding the land together at the time the proceedings are begun: Law v. Patterson, 1 W. & S. 184; Longwell v. Bentley, 23 Pa. 99; McMasters v. Carothers, 1 Pa. 324; Bigley v. Jones, 114 Pa. 510. But all of these authorities declare that the possession which will defeat proceedings in partition must be adverse; that the ouster of the other tenants in common by the one who denies the right of partition, must be actual. And in all of the cases referred to, it appears that such was the character of the possession, at the time when the proceedings in partition were instituted. It also appears that from an examination of those cases, that they were in the common law courts, brought under the statute investing the common law courts with powers of proceeding in partition, and not in the Orphans' Court, which has jurisdiction in the case in hand.

It does not appear by the record in this case that any answer was filed by Daniel Welch to the petition for the writ of partition, nor to the writ when it was served on him, in which he denied the right to make partition of that part of the estate which, in his testimony, under the testimony taken on the exceptions, he now claims to hold adversely. There is nothing on the record by which his right to partition is raised, until exceptions were filed by his counsel to the return of the sheriff and the inquest held, when it was presented for confirmation.

Opinion of Court below.

The only point that we can consider and pass upon at this time is, whether or not the possession, at the time of the presentation of the petition and the award of partition, was in common between Daniel Welch, an exceptant, and the other heirs of George and Franklin Welch. We cannot try that question of title, if, on an inspection of the record, and the testimony in the case, taken in support of the exceptions, it should appear that there is such claim of title as should be passed upon by a jury. Such a claim of title must necessarily be settled by an action of ejectment before proceedings in partition could be had.

[The testimony of Daniel Welch and other witnesses were taken upon depositions, for the purpose of showing possession of one portion of the land described in the petition and the return of the sheriff and inquest, for a period of more than twenty-one years; the manifest purpose of which would be to establish title by adverse possession under the statute of limitations. Daniel Welch is not a competent witness for this purpose, and aside from his testimony, there is no testimony which could be at all submitted to a jury sitting in an action of ejectment, upon the question of title under the statute of limitations. No verdict could be sustained upon this testimony, which would find that he was entitled to hold the land by reason of the statute of limitations, and adverse holding for twenty-one years.] [6]

There is evidence that some time prior to the death of his brother, Franklin Welch, Mr. McCloskey, a surveyor, at the instance of either Daniel or Franklin Welch, and without any direction or consent of the other heirs of George Welch, and those who are now heirs of Franklin Welch, ran a line which divided the premises described in the writ of partition into two parts. But it is manifest from the testimony that, even after that time, those two brothers—one of them living on the old homestead with his mother and one of his sisters, and Daniel living upon the part which Mr. McCloskey ran off and designated on the draft as the Daniel Welch part—did not recognize this line of division, or use the property after it was made, with any reference to a division. The whole property was farmed after that date as it had been before. The crops were stored in the barn upon the old homestead, and the family of Daniel Welch, and his mother and the sister, living with Franklin Welch,

received and derived their maintenance and support from the whole property in common. Aside from this division line being run, I cannot find any act of Daniel Welch, which, in my opinion, would be sufficient to put the other heirs of George Welch upon notice as to his claim to that portion of the estate of George Welch which he now claims.

Under the last will and testament of George Welch, the property described in the writ of partition was devised in undivided moieties to Franklin Welch and Maria Welch, with the request that Maria Welch should assist her brother, Daniel Welch, in business. Maria and Franklin never made any division of the property between them. Daniel Welch, prior to 1871, erected a small dwelling house and some other buildings upon that portion of the estate which he now claims as his. He resided there for some time, and then moved to a property known as the Bloom property, removing with him nearly all of his furniture, if not all of it, and continued at the Bloom property for the period of one year. This was in 1871, or thereabouts. He then returned to the property in question, and has continued to reside upon it from that time to the present.

The whole property was assessed in the name of Franklin Welch, from a short time after the death of George Welch, until about the year 1883, when Franklin Welch died. There is some evidence of taxes having been paid in 1881 and years subsequent by Daniel Welch, but the amounts are small, and presumably they were paid out of the funds arising from the property itself.

In all this I can find nothing, which, in my judgment, would be sufficient to give notice to his sister, Maria Welch, in whom the title vested by reason of the devise of her father, that he, Daniel Welch, claimed to hold this property adverse to her. The question therefore remains whether or not in this proceeding in the Orphans' Court, the mere denial of the tenancy in common upon the return of the writ of partition, is sufficient to require the court to suspend the proceedings in partition.

The Orphans' Court is essentially a court of equity, and its proceedings regulated according to the principles of equity : Bayley's App., 60 Pa. 354. May not the court then look into this testimony, upon this alleged claim of Daniel Welch, sufficiently far to determine whether or not it has any foundation

in fact? For why should the court suspend proceedings in partition, and compel the parties to go into the court of common law with their action of ejectment to determine a question of alleged title, which, upon a mere inspection of the testimony, as it appears, is not sufficient to justify submitting to a jury. From all of the authorities to which we have been referred, and all which we have been able to find, it appears that the possession which was held to defeat the proceedings in partition was an actual and exclusive possession. The possession of Daniel Welch lacks, even when his own testimony is considered, this essential element of exclusiveness.

The farm was cultivated by Daniel Welch and his brother Franklin Welch in common, without respect to division or boundary between them. The crops were stored together, and were used in common; no division whatever was made between them or the other heirs of George Welch, so far as any testimony appears in this case, but they were appropriated to the common use of those living upon it. And as said before, the only act which could in any possible way indicate a purpose on the part of Daniel Welch to hold any part of this property to himself, was the running of a line by Mr. McCloskey, the surveyor, dividing the land between him and his brother, Franklin Welch, which was never assented to by Maria Welch, and so far as the testimony shows, was done without her knowledge and direction. Having gone into possession with Franklin Welch, by the permission of his sister Maria, to whom the undivided one half part was devised, he could not deny her title, unless he would do so by such act of declaration or adverse holding as is sufficient to challenge her notice, and to put her upon her guard against his claim. There is nothing in the testimony, that I can find, sufficient to do this.

It has been decided, that in a proceeding in partition in the Orphans' Court, the mere assertion of a claim of possession or title in one, is not sufficient to defeat proceedings in partition; that if the petition sets out the name of the parties in interest, and avers the fact of the holding in joint possession, or as tenants in common, and there is no denial of the facts averred in the petition for the inquest, they are to be taken as admitted; that a mere naked claim to hold the real estate exclusive of the petitioner, showing neither title to the whole, nor

exclusive possession in the claimant, is not sufficient, and that to prevail it must point out some defect in the petition, or expressly aver title or adverse possession to justify the court to refuse to proceed: Wistar's App., 115 Pa. 241. A bill in equity for a partition is properly brought even though the complainant's title be equitable and there be adverse possession by the defendant: Church's App., 17 W. N. 541. It is true, that there is a marked distinction between partition proceedings in law and in equity, but notwithstanding this is true, I cannot, upon mature reflection, see why the proceedings should be stayed upon testimony which, when taken together, shows no legal or equitable title or adverse holding.

So much of the exceptions, then, as is involved in the claim of Daniel Welch, that he does not hold in common with the other heirs, is not sustained.

So far as the exception goes to the sufficiency of the notice to the heirs, of the time and place of holding inquest, there is no testimony which sustains the allegation of the exceptant, and we are bound to presume that the sheriff did his duty, and that due notice of the time to which the proceedings in inquest were adjourned, was given to the heirs, and that it is true, as he returns, that as many as saw fit were present.

[For these reasons, the several exceptions to the return of the inquest are overruled, and the proceedings confirmed, and it is ordered that a rule issue directed to the heirs and parties in interest, to accept or refuse the property at the valuation or appraisement placed thereon by the inquest, or show cause why the same should not be sold; this rule to be returnable upon the first day of the next term; personal notice thereof to be given to the heirs resident in the county, and to such as may be non-residents, if any, by publication in two newspapers in the county, three weeks previous to the return day of this rule.] [1]

Thereupon, the exceptant took this appeal, assigning as errors :

1. The foregoing decree embraced in [ ] [1]

2–5. The overruling of the exceptions to the return. [2 to 5]

6. The portion of the foregoing opinion in [ ] [6]

*Mr. A. G. Kramer*, for the appellant.

*Mr. J. B. McEnally* and *Mr. Daniel McCurdy*, for the appellees, were not heard.

PER CURIAM:

This decree is affirmed upon the opinion of the learned judge of the Orphans' Court, and the appeal is dismissed at the costs of the appellant.