## Dull's Estate.

*Will—Conversion of real estate—"Legal share" to widow—Intention—Construction.*

Testator dying without children gave to his wife "The furniture, pictures, household goods, horses, carriage and house and lot in which we now reside, to have and to hold and enjoy as long as she may desire to live there, after which time I direct that they be disposed of by my executors, and become part of my estate. I also direct the legal share

of all my real estate and personal property to be paid to my wife as her share out of my estate." He gave a money legacy and the "balance" of his estate to relatives. He gave a positive, express and unconditioned direction to his executors to dispose of all of his estate within three years after the testator's death. *Held*, (1) that the direction to sell worked an absolute conversion of the real estate into personalty, and (2) that the widow took one-half of the entire estate absolutely, regarded as personalty.

Argued June 1, 1908. Appeal, No. 142, Jan. T., 1908, by Henry B. McCormick and Vance C. McCormick, executors of Hannah C. Criswell, deceased, from decree of O. C. Mifflin Co., dismissing exceptions to auditor's report in Estate of C. P. Dull, deceased. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to report of William W. Uttley, Esq., auditor. The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*S. P. Wolverton* and *M. W. Jacobs*, with them *S. P. Wolverton, Jr.*, and *Grant Herring*, for appellants.—The intention of the testator, not the logical consequences of the fiction of equitable conversion, determine the widow's share.

The principle of equitable conversion is not a hard and fast rule which must always be rigorously applied with all its consequences, whenever there is a direction to sell real estate : Foster's Appeal, 74 Pa. 391, 397; Yerkes v. Yerkes, 200 Pa. 419, 423 ; Shedden's Estate, 210 Pa. 82; Painter v. Painter, 220 Pa. 82, 86 ; but is merely a presumption in accordance with the supposed intention of the testator, which gives way whenever that intention appears : Henszey's Est., 220 Pa. 212; Hunter's Est., 6 Pa. 97.

Testator's intention is to be gathered not only from the words he used, but also from the circumstances under which he used them : Hermann's Est., 220 Pa. 52.

If the language of the testator leaves his intention in doubt, that construction is to be favored which most nearly conforms to the intestate laws : Finney's Appeal, 113 Pa. 11; Dunlap's

Appeal, 116 Pa. 500 ; Hoch's Estate, 154 Pa. 417, 420 ; Minter's Appeal, 40 Pa. 111; France's Est., 75 Pa. 220.

*W. U. Hensel*, for appellee.—The will worked a conversion of the real estate: Hunt's App., 105 Pa. 128 ; Irwin v. Patchen, 164 Pa. 51 ; Jones v. Caldwell, 97 Pa. 42; Roland v. Miller, 100 Pa. 47; Lindley's App., 102 Pa. 235 ; Fahnestock v. Fahnestock, 152 Pa. 56 ; Vanuxem's Est., 212 Pa. 315 ; Dalrymple's Est., 215 Pa. 367.

A widow claiming under the will is not to be treated as a mere volunteer, but as a purchaser, and is, therefore, entitled to a fair and liberal construction of the will in her interest: McCallum's Est., 211 Pa. 205 ; Musselman's Est., 39 Pa. 469 ; Finney's App., 113 Pa. 11 ; Clery's App., 35 Pa. 54.

If the power given in the will worked a conversion, the proceeds of the real estate were stamped with the character of the personalty at the death of the testator, for in all cases of conversion the interest of the heir or legatee prior to the election to take as real estate has been regarded as a mere chose in action. At the death of the testator, the realty eo instanti is converted and passes as personalty : Miller v. Commonwealth, 111 Pa. 321; Mellon v. Reed, 123 Pa. 1; Bender v. Luckenbach, 162 Pa. 18; Horner's App., 56 Pa. 405 ; Evans's App., 63 Pa. 183 ; Davis's App., 83 Pa. 348 ; McClure's App., 72 Pa. 414; Klotz's Est., 190 Pa. 152.

No contrary intention on the part of the testator is disclosed. Every manifest intent of the testator was in support of the more liberal provisions for his widow : Wolf's Est., 9 W. N. C. 260 ; Sharpe's Est., 16 Phila. 403.

However, the exact point in issue in this case has been actually decided, and in both cases the construction has been in favor of the possession of the widow : Williams v. Williams, 1 W. N. C. 54 ; Barry's Est., 13 Phila. 310.

OPINION BY MR. JUSTICE STEWART, June 23, 1908:

What interest in his estate did the testator intend that his widow should take ? The clause in the will relating to her is as follows : " To my beloved wife, Hannah Wiley Dull, I give, devise and bequeath the furniture, pictures, household goods, horses, carriage, and house and lot in which we now reside, to

have and to hold and enjoy as long as she may desire to live there, after which time I direct that they be disposed of by my executors and become part of my estate. I also direct the legal share of my real estate and personal property to be paid to my said beloved wife as her share out of my estate." By the next succeeded item a legacy of $1,500 is given to a relative, and immediately following occurs this residuary clause: "All the balance of my estate I devise to my three sisters, Mrs. Hannah Criswell, Mrs. Nancy Macklin and Mrs. Margaret Horning, or their heirs, share and share alike, to be paid by my executors as hereinafter named." What is given the widow is her "legal share." These words, standing alone and unqualified by other expressions and provisions in the will, would indicate with much certainty—there being no children—an intention that she should take one half of the personal property absolutely, and the income of one-half of the real estate during life. Since the law seeks to give effect to the testator's intention as derived from the whole will, the inquiry must be to discover whether any other or different purpose is elsewhere expressed, or indicated with equal or greater certainty. The will contains a positive, express and unconditioned direction to the executors to dispose of all the balance of the estate within three years after the testator's death. This balance evidently embraced all the real estate owned by testator at the time of his death, even the house and lot devoted to the widow's use, in the event of her occupancy of it terminating within the period fixed. It is designated as balance, for the reason that in an earlier part of the same clause, testator had directed that a certain sand property of large value, should be retained and operated by the executors for a period not exceeding five years. This property the testator sold in his lifetime; but it having been set apart in the will from the rest, since it was the only piece of real estate thus distinguished, the direction to sell included all else. What, then, is the legal significance of this direction to sell or dispose of all the testator's real estate; and how does it reflect the testator's intention with respect to the share of the widow? The right of a testator to make land money, to effect his own purpose, is unquestionable; and it follows from this right that persons claiming property under a will directing its sale, must take it

in the character which the will imposes on it. This results not from the application of any artificial rule, or any equitable doctrine, but solely because it is the testator's expressed desire. How could a testator make it more certain and conclusive that he did not intend his beneficiary to take his real estate, than by directing its sale? In such case it is not the law that works the conversion, but the will that directs it. The law sometimes employs a fiction in aid of a testator's intention, and by use of it, the conversion which the testator ordered is anticipated in such a way, that what is ordered to be done is regarded as actually accomplished; but that fiction is without application here, and the doctrine of equitable conversion, much discussed upon the argument, plays no part. If the question were as to when the conversion arose, whether at the death of the testator, or when the sale was actually made, then the fiction and doctrine would apply; but no such question concerns us here. It is enough to know that there is a positive direction to convert, and the result must have been the same whether actual conversion or equitable was contemplated. The evident purpose of the testator in directing a sale of his land was in connection with the distribution among his beneficiaries; and the presumption is that he knew if his lands were sold as he had directed, the proceeds would be distributed as personalty. It is not pretended that the will gives to the three sisters who take the residue any estate in the lands. Conversion as to them is admitted, and it is freely allowed that all the interest they have is in the execution of the trust through which they are to do receive their shares in money. The effort is to distinguish between them and the widow in this regard. Because the testator has described the interest given the latter as a "legal share," it is argued that his intention must have been to confine her share within the limitations of intestacy; that is to say, one-half of the personal estate absolutely and one-half the income of the real estate during life. That the testator could have so limited and restricted her share is a matter of course; but since the legal share may under certain conditions, when there is real estate, embrace the one-half the entire estate, regarded as personalty, the question remains, what was this testator's understanding as to the meaning of the words used? In this connection the

fact that his will directs a conversion of the real estate is of large significance. Under this provision what he was distributing to his beneficiaries was money, not land, and it was the money to be derived from the sale of the land that he had under contemplation. A widow's legal share under conditions we have here, the estate being personalty, would be the one-half absolutely. It is always a legitimate presumption that a testator in framing his will knew the law, and intended such results as would follow through the law, unless he provides to the contrary. Not only does the will contain no contrary provision, but every provision and direction is consistent with the purpose to make the widow's share payable directly to her out of the net result obtained through a sale of the entire estate, divested of all charges. It is as much because of what the will does not contain, as of what it does, that we reach the conclusion that the testator intended his widow to take one-half the whole absolutely. It contains nothing which in the remotest way suggests that her share is to be a charge upon the real estate; or that it shall be held in trust in case the land be sold discharged of it; or that it was income she was to receive; or that her ownership was to be qualified in any way. On the contrary, in express terms it directs that this legal share be paid to her out of the estate, just as it provides that the shares of the three sisters are to be paid to them. ' This was the will of a man of extensive business experience, owning large estates in land. It shows an anxiety on his part that his lands when sold, should sell to the largest advantage. It would be apparent to anyone of the most limited experience and observation, that this result would be impossible, were a dower of one-half the whole value to be charged upon the land. Did he contemplate such a sale? We cannot think so. If he did not, but intended a sale outright, then if appellant's view be correct, we are confronted by this other circumstance so unusual in testamentary dispositions as to be remarkable, that he created a fund for the widow for life without giving any directions at all with respect to its investment, control or management, other than that it was to be paid to her. That he intended a sale which would divest the dower we have no doubt; that he intended the widow to receive but the income of one-half the purchase money during her life, is

not only inconsistent with the general scheme of the will, but conflicts with the express provision which requires that her share be paid to herself. A careful examination of the will in all its parts has satisfied us that the conclusion reached in the court below awarding the widow the one-half of the entire estate as personalty, accords with the expressed intention of the testator.

The appeal is dismissed at the cost of appellants and the decree is affirmed.