# Brandon et al. v. McKinney et al., Appellants.

*Real estate—Conversion by will—Reconversion—Intention—Acts of parties—Judgments.*

1. While the intention on the part of the persons beneficially interested to reconvert into realty real estate of a decedent which had by will been converted into personalty must clearly and unmistakably appear, yet a direct election is not necessary. Any act or acts which disclose plainly an intention to hold the real estate as such are sufficient.

2. Where it appears that the parties beneficially interested in real estate directed by a testator to be sold, took control of the real estate the year following testator's death, leased the premises for oil and gas purposes, issued pipe line division orders for oil procured from the leases and made a deed granting a right of way to a railroad company across the premises, such acts are properly held to constitute an election as of the date of the deed to the railroad company, and judgments entered thereafter against the parties became a lien on the property.

*Equity—Jurisdiction—Conversion—Written evidence—Questions of court.*

3. A court of equity has jurisdiction to decree partition where the issue is a question of reconversion and this depends upon evidence in writing disclosing the intention of the parties.

*Appeals, C. P.—Objection—Time for objection—Insufficiency of pleadings.*

4. It is too late for a party on appeal to complain for the first time of the insufficiency of the averments in a bill in equity, after the testimony had been given before the chancellor and the facts found and a decree made.

Argued Oct. 11, 1911. Appeal, No. 197, Oct. T., 1911, by defendant, from decree of C. P. Butler Co., Dec. T., 1907, No. 6, in Equity, granting partition in case of W. D. Brandon and Ella Harley, Guardian of Edna E. Harley, v. Margaret McKinney, widow, James McKinney, M. H. McKinney, D. T. McKinney, T. D. McKinney, W. S. McKinney, Robert McKinney, H. B. McKinney, A. F. McKinney, Mrs. Mary B. Wahl, Mrs. Clara McKinney, E. M. Saylor and T. W. Terwilliger, A. F. McKinney, and Robert McKinney, executors of the last will of C. A. Mc-

Kinney, deceased.   Before Fell, C. J., Brown, Mestrezat, Potter, Stewart and Moschzisker, JJ.   Affirmed.

Bill in equity for a partition.   Before Galbreath, P. J.

It appeared by the record that C. A. McKinney died March 13, 1887, testate and seized of the land sought to be apportioned.   By his last will and testament he directed that sufficient of his land be sold to pay all just claims against his estate.   Of the balance, one-third was given to his wife, Margaret, and minor children, should there be any, and he directed that after the decease of his wife, his farm be sold and the proceeds divided equally among his surviving children.   Two of his sons, Amos, and Robert, were appointed executors of his will.

On December 17, 1888, a lease for oil and gas purposes on a portion of the land was made by the widow and heirs of decedent to I. G. Smith by virtue of which operations were subsequently carried on and oil produced and a one-eighth royalty interest thereof was run to the credit, in the pipe line, of the widow and children of C. A. McKinney, deceased, pursuant to a division order signed by all of them and delivered to the National Transit Company February 28, 1891, certifying that they were the legal owners of said royalty interest and the proceeds of sale of said royalty interest were received by said widow and heirs.   This lease was joined in by leave of court by W. D. Brandon as guardian of Margaret Eva McKinney, then a minor, subsequently married to George H. Harley. At the time of the execution of this division order, which was after her marriage, she was of lawful age and signed the same and thereafter received her portion of the oil.

A lease for oil and gas purposes bearing date October 15, 1889, to Stewart and Hoffius was executed by the widow and all the children of C. A. McKinney, deceased, for thirty acres of said land, which lease was signed also by William Wahl and George H. Harley, husbands of the two married daughters of decedent, but was not acknowledged in any form by said married daughters.   Operations were

carried on under said lease and oil was obtained and a division order bearing date October 7, 1890, signed by the widow and all the heirs of said decedent was delivered to the National Transit Company and the oil and the proceeds thereof were divided accordingly.

A lease for oil and gas purposes was also made to Dale and Thompson for a portion of said land, the date of which lease and the names of the parties executing it do not appear as the contract of lease could not be found. A bonus of $600 was paid on said lease which was used to pay debts as far as required against the estate of said decedent and the balance thereof was divided among the widow and heirs. Operations were carried on under said lease and oil obtained in paying quantities and a division order dated November, 1890, signed inter alios by the widow and all the children of C. A. McKinney, deceased, representing the one-eighth royalty in the oil produced under said lease, was delivered to the National Transit Company and the proceeds of the sale of the royalty interest were received by the said widow and children of said decedent accordingly during the time oil was produced from said leasehold.

A lease for oil and gas purposes of a portion of said land and signed by all the defendants was given to E. M. Saylor and T. W. Terwilliger dated September 1, 1905, under which the said land had been and is now being operated for oil and gas purposes and large quantities of oil from time to time have been produced from said land. Operations thereon were begun about the latter part of November, 1905, and are still being carried on and oil is still being produced therefrom and the proceeds of sale of the royalty interest are being distributed to the widow and heirs. This lease was joined in by Ella Harley, trustee and guardian of Edna Harley, minor daughter of Margaret E. Harley, deceased.

A right of way to the Pittsburg, Harmony, Butler and New Castle Street Railway Company bearing date April 7, 1906, for the location, construction and operation

of a street railway across said land in consideration of the payment of $550, being $50.00 to the widow and each heir of the decedent, signed by the widow and surviving children of said decedent and subsequently joined in by Ella Harley, guardian of Edna Harley, was made and delivered to said railway company. The record of said right of way shows the acknowledgment thereof by all the grantors including Mary B. Wahl and her husband, William Wahl, but the acknowledgment of Mary B. Wahl is not separate and apart from her said husband.

On October 31, 1904, a judgment was entered at C. P. No. 103, December Term, 1904, in favor of J. A. Painter v. D. T. McKinney, a son of decedent, and Margaret McKinney, his widow, which judgment was entered by confession on warrant of attorney with waiver of inquisition and agreement of condemnation. On November 5, 1906, a writ of vend. ex. with clause of fi. fa. issued on said judgment by virtue of which the interest of the defendants in the land sought to be partitioned was levied upon, which writ with levy indorsed, was returned by order of attorney, December 3, 1906. On January 19, 1907, written notice was served on Margaret McKinney, the widow and life tenant under the will of her husband, C. A. McKinney, deceased, that application would be made to the court of common pleas of Butler county on February 4, 1907, at ten o'clock A. M. for a writ of vend. ex. in said case. On said February 4, 1907, a motion was made in said court with proof of service of said notice on Margaret McKinney, that a writ of vend. ex. be directed to issue to sell the life estate of Margaret McKinney, aforesaid, and the order awarding the said writ was accordingly made without objection. Pursuant to said writ, an alias writ of vend. ex. issued on said February 4, 1907, on which, after due advertisement, the interest of the defendants in said land was sold at public outcry by the sheriff to W. D. Brandon, one of the plaintiffs herein, to whom deed was duly made and acknowledged March 19, 1907.

On February 4, 1891, judgment was entered in said court at C. P. No. 253, March Term, 1891, in favor of Jennie P. Mates for use v. M. H. McKinney, another of decedent's sons, and on execution issued thereon, the interest of said defendant in said land was levied upon and sold to W. D. Brandon, aforesaid, to whom deed was duly made bearing date December 13, 1893.

On October 18, 1901, a judgment was entered in common pleas court of Butler county on judgment note on warrant of attorney with waiver of inquisition and agreement of condemnation. Scire facias issued thereon November 16, 1906, and an alias scire facias December 17, 1906, on which judgment was entered at No. 58, September Term, 1907, in favor of George H. Harley for use v. W. S. McKinney, one of the defendants named in the pending bill and a son of said decedent, on which judgment execution issued and the interest of the said W. S. McKinney in said land was levied upon and sold by the sheriff to Ella Harley, guardian of Edna Harley, and deed delivered bearing date December 3, 1907.

The court awarded partition.

On exceptions to the adjudication GALBREATH, P. J., on March 22, 1909, filed the following opinion:

On the trial of this case, little stress was laid by counsel for plaintiffs on the effect on the question at issue of the various enabling statutes of recent years by which the rights and powers of married women are enlarged. On the argument of the exceptions filed, the effect of those enactments was urged upon the court's consideration.

The Act of June 8, 1893, P. L. 344, sec. 1, provides that "Hereafter a married woman shall have the same right and power as an unmarried person to acquire, own, possess, control, use, lease, sell, or otherwise dispose of any property of any kind, real, personal or mixed and either in possession or expectancy, and may exercise the said right and power in the same manner and to the same extent as an unmarried person, but she may not mortgage

or convey her real estate, unless her husband join in such mortgage or conveyance." The same provisions in substance are found in the Act of June 3, 1887, P. L. 332. Under these acts, however, she could not make a valid conveyance although her husband was joined therein, unless it were separately acknowledged by her, as required by the Act of February 24, 1770, 1 Sm. L. 307: Bingler v. Bowman, 194 Pa. 210. However, by the Act of April 4, 1901, P. L. 67, the acknowledgment of a married woman may be, "In the same manner and form as though said married woman were feme sole; said acknowledgment to have the same force and effect as if taken separate and apart from the husband of said married woman." Any contract made by a married woman touching her real estate in which her husband joins is good without acknowledgment, providing it is not a mortgage or conveyance of the property: McCoy v. Niblick, 221 Pa. 123. In the discussion of this case in the former opinion, to which the pending exceptions were filed, we held that a married woman may elect to reconvert, but to have this effect by implication growing out of acts in pais, those acts must be performed with the same formalities requisite to convey her separate estate, in support of which conclusion we cited 2 American and English Decisions in Equity, p. 96, and cases there referred to. We are not convinced that this conclusion was error, although in the absence of the authority quoted and the trend of judicial decision, as evidenced in the cases referred to, we would be inclined to hold that a married woman could elect to reconvert by receiving the proceeds of real estate, especially when the proceeds so received were essentially a part of the corpus of the land, as in the case of the receipt of a royalty interest from oil. In the light, however, of the authorities to which we have referred, we would not seem to be justified in so holding. The reason for the rule laid down is possibly to be found in the fact that where an election is predicated upon an act which is essentially a sale of the real estate, which is the case where an oil lease has been given, that

act can only be evidenced by performance in the statutory way on the part of a married woman. The question remains, however, whether, in the light of the enabling statutes, before referred to, any of the acts on which plaintiffs seek to predicate a reconversion come within the rule as above held. An election to reconvert may arise by implication out of the acts of the parties and it is necessary that all should elect. It is not necessary, however, that all should elect at the same time, or in the same way, the question being, whether all have at some time and in some way, either expressly or by implication, elected to take the land as such, instead of the proceeds thereof.

As to the eight sons of the decedent, C. A. McKinney, there can be no doubt, we think, that their execution of leases of the land for oil and gas purposes, reserving a royalty to themselves, and the receipt of such royalty in kind for a period of years pursuant to division orders signed by them, gave rise to an implied election to take the land as such. These leases were essentially a sale of the oil in place, they were dealing with the land as such. If, in addition to those, there was an election to take the land in its original character by the two daughters, Mrs. Harley and Mrs. Wahl, the reconversion would be complete. In the former opinion, we predicated the conclusion that no reconversion had taken place largely upon the fact that although Mrs. Wahl had joined with the others in the execution of leases of the land for oil purposes, had signed division orders and received her share of the proceeds of the oil, and although she and her husband had joined with all the other heirs in executing a right of way to the railway company and had acknowledged it, yet, there had been no separate acknowledgment by her, thus overlooking the fact that this is no longer necessary since the aforesaid act of 1901 was passed. In view of that enactment, it was not necessary that she should separately acknowledge it.

At this point, it becomes necessary to consider the effect of a paper executed by a number of the McKinney heirs

before the execution of said right of way and set forth in full in the fourteenth finding of fact. It is a declaration by those signing it that it was not their intention in the execution of leases for oil and gas purposes, which had been or might be made, nor in the execution of any right of way for street car purposes or otherwise to convert the property into land contrary to the intent of the will of their father, C. A. McKinney, deceased. Whatever effect this instrument might have on the act they were about to perform or which they might perform in the future touching the land, yet, we think it could not have the effect of changing the character of that which they had already done in years gone by so as to nullify an election already made by them or any of them and growing as a legal sequence and by implication of law out of their acts. In short, they could not, we think, by such a declaration undo the legal effect of their former acts. Its effect on the right of way then in contemplation is problematical. Assuming that it would negative an implication of an election to reconvert on the part of those signing it, yet it would not have that effect in the case of those not joining in it, and although Mrs. Wahl is named in the body of the writing, yet, it is not signed by her and is not, therefore, a declaration of intention by her. Her execution of the right of way to the railway company stands unaffected by any declaration contained in the writing referred to and her execution of said right of way was, we think, an election in law to take the land as such. It was the conveyance of a right in or upon the land and growing out of the land and running with the land, and having in it the possibilities of duration beyond the time when conversion would take place under the will, and thus manifesting an intent on the part of those granting it to deal with the land as such beyond the time of that event. Such right of way could not be fastened on to a mere right to receive the proceeds of the sale of the land. As to Mrs. Wahl, therefore, we conclude that there was an election to reconvert when she, jointly with her husband,

executed and acknowledged such right of way, April 7, 1906.

In the former discussion of this question, we said that the acts which will have the effect of a reconversion of the property must be joined in by all the parties in interest, "who must be sui juris or if not may possibly be authorized thereto by the proper court, in which case the election to reconvert is exercised by the court in order to preserve or further the interest of the person under disability." This was predicated on the citation of authorities to that effect found in 2 American and English Decisions in Equity, p. 96, and we then had in mind its application to the case of Mrs. Harley, who, prior to her marriage was Eva McKinney, a daughter of the decedent. But, as we at that time concluded that there had been no election on the part of Mrs. Wahl, it did not seem necessary to pass on the question of an election by or on behalf of Mrs. Harley. It now becomes necessary to do so.

On March 21, 1889, Eva McKinney, then a minor, but who would attain her majority on September 17, following, chose as her guardian W. D. Brandon, Esq., who was accordingly appointed. The petition of Eva McKinney for appointment of guardian sets out, inter alia, that she is the daughter of C. A. McKinney, deceased, and is the owner of the undivided one-tenth interest in a tract of land containing eighty acres, "being the farm lately owned by her father and subject to her mother's interest, as widow." On the same day, the guardian presented his petition to the court setting forth that his ward was the owner of an undivided one-tenth interest in said eighty acres of land; that the widow and remaining heirs, all of age, had executed a lease of twenty-five acres of said land to I. G. Smith for oil and gas purposes; that the minor had agreed to join in said lease and for that purpose had said guardian appointed; that operations under said lease had already begun and praying that he be permitted to join in said lease, a copy of which was attached to petition. The ward also joined in the petition. The court

thereupon made the decree setting forth that it would be for the best interest of the minor that her guardian execute said lease and authorized him so to do, which decree was in due form complied with by said guardian. This decree necessarily involved an adjudication that the ward's interest was an interest in the land and authorized the guardian to deal with it as such and in a way that was deemed to be for the best interest of the ward. This having been done in the ward's interest and by authority of the proper court must be taken, we think, as the equivalent, in its legal consequence, of the same act when performed by one sui juris.

We conclude, therefore, that all the children of the decedent, in the several ways hereinbefore set forth have elected to take the land as such and that the reconversion became complete with the execution by Mrs. Wahl on April 7, 1906, of said right of way to said railway company. The effect of this was to give back to the land its original and actual character and to give to all those theretofore entitled to the proceeds of sale under the will an interest in the land as such, commensurate with their respective shares in the proceeds of sale and a sale of any interest thereafter made as land would vest title thereto in the purchaser.

Applying this conclusion to the facts as found, we have two sales made on executions after the date when the reconversion became complete, as follows: First, sale made by the sheriff March 19, 1907, of the interest of D. T. McKinney and Margaret McKinney, son and widow of decedent, on the judgment in favor of J. A. Painter entered October 31, 1904, as set forth in the fifth finding of fact. Although this judgment was entered before the time the reconversion became complete, yet, the actual levy made on the land after that event would attach to the land as such, and a sale thereon would pass title thereto, we take it, as in the case of after acquired land, when an execution issued on a previous judgment and levied upon after acquired lands is a lien thereon: Wilson's Appeal, 90 Pa. 370.

In the former opinion, we held that the sale made on said judgment served to pass the title of Margaret McKinney, widow, to the purchaser, W. D. Brandon, but not the interest of T. D. McKinney. We now conclude that the said sale passed to the purchaser the undivided one-tenth interest of the other defendant, D. T. McKinney, as well. Second, the other sale made after the time of reconversion on April 7, 1906, was that of the interest of W. S. McKinney on the judgment entered October 18, 1901, in favor of George H. Harley for use, on which judgment on sci. fa. was entered at No. 58, September Term, 1907. The interest of the defendant was sold by the sheriff to Ella Harley, guardian, to whom deed was delivered December 3, 1907, as set out in the seventh finding of fact.

In conformity with these views the first, fourth, fifth, sixth, seventh, eighth, ninth and tenth exceptions filed on part of the plaintiffs generally are sustained. The exception filed on part of Clara B. and Robert McKinney is also sustained and the court finds the facts as in said exception set forth, but the entry of the judgment therein set forth did not become a lien on any interest of the defendants in the land for the reason that reconversion had not yet taken place until after the entry of said judgment and sale thereon, in consequence of which, no interest in the land passed to the purchaser. All other exceptions are dismissed and the former conclusions of law are modified in accordance herewith and restated as follows:

1. The will of C. A. McKinney, deceased, worked an equitable conversion of his land into personalty as to his children.

2. The said land has been reconverted into its original character as land through the election by implication of law to so reconvert by all the children of said deceased, which said election became complete on April 7, 1906.

3. W. D. Brandon, one of the plaintiffs, is the owner of an undivided one-third interest in the land sought to be partitioned during the lifetime of Mrs. Margaret McKinney, widow of the deceased. He is also the owner of

an undivided one-tenth interest in the said land in fee as purchaser thereof at public sale after reconversion, as aforesaid, said interest being subject to said life estate.

4. Ella Harley, as trustee and guardian of Edna Harley, is the owner of an undivided two-tenths interest in said land, to-wit: The one-tenth bequeathed by Eva Harley, formerly Eva McKinney, to her husband, George H. Harley, who conveyed the same to Ella Harley in trust for Edna Harley as set forth in the third finding of fact; also an additional one-tenth purchased by said Ella Harley, guardian, at sheriff's sale, as hereinbefore set forth, said interests being likewise subject to said life estate.

5. That the other heirs of C. A. McKinney, deceased, except D. T. and W. S., whose interests were sold, are the owners of interests in said land subject, as aforesaid, commensurate with their respective interests in the proceeds of sale under the will of said deceased prior to the reconversion of the land.

6. That the plaintiffs herein are entitled to have partition of said land.

On exceptions to final decree GALBREATH, P. J., filed the following opinion:

In the opinion filed in this case, September 8, 1908, after hearing on bill and answer the facts were adjudged and the conclusions of law stated, to which exceptions were filed on part of the defendants. After hearing and argument on the exceptions so filed the original findings of fact and conclusions of law were modified, as set forth in the opinion filed March 22, 1909, in which opinion, also the interests of the parties, plaintiff and defendant, were found and stated and a decree in accordance therewith and setting forth said interests was duly made and filed October 2, 1909, in which decree, also, F. J. Forquer, Esq., was appointed master to divide and partition said real estate into purparts according to the shares and interests of the respective parties thereto if the same can be divided without prejudice to the interests of said parties respectively, or

without prejudice to or spoiling the whole; and to value the same and to ascertain the amount which shall be paid or charged thereon for owelty, or which shall be paid or secured to the parties to whom no purpart may or can be alloted in the manner now authorized by law under writs of partition. And if the master shall find that such partition can be made either of the whole of said real estate or any part thereof, then upon such valuation and partition, to award and allot the said purparts to and among the parties severally and respectively entitled thereto, together with the sums to be charged thereon and payable as and for owelty of partition. And if the master shall find that the said real estate cannot be conveniently divided into as many purparts as there are parties entitled, he shall award and allot the amount or sum to be paid or secured to them respectively and the times when such payments shall be made and the purparts out of which the same shall be payable, and if he shall find that the real estate or tenements cannot be divided without prejudice to or spoiling the whole then he shall value or appraise the same." The master so appointed having duly qualified and gone upon the premises and having there met the parties, filed his report in court March 15, 1911, finding that the land described in the bill cannot be divided into purparts to accommodate all in interest without injury to or spoiling the whole and that he had appraised and valued the land described in the bill at $90.00 per acre, aggregating the sum of $6,379.20. On the report thus made the court on March 15, 1911, decreed as follows: "Now, March 15, 1911, the foregoing report of the master in equity in this case was presented in open court and on due consideration, his report of inquest and valuation thereof is now approved and confirmed and unless exceptions be filed thereto within ten days, the master is authorized to issue a citation upon all the parties in interest to appear before him, as master, to the end that the matter may be proceeded with according to law." To the decree thus made the pending exceptions were

filed on part of some of the defendants on March 15, 1911.

The matters raised in the exceptions filed have been for the most part passed upon and adjudicated in the·opinions heretofore filed. The exceptions do, however, raise, for the first time, the question that plaintiffs' bill does not sufficiently aver the facts upon which a reconversion of the property is predicated. However this may be, the fact remains that the defendants did not raise this question as to the sufficiency of the averments of the bill in this respect until after the testimony was in, the facts found and decree made, and even if it were true that the averments in the bill were not sufficient, testimony was received of the facts upon which the plaintiffs sought to establish a reconversion, without any objection on part of defendants that the bill did not sufficiently aver the facts relied upon. We think it is now too late to raise the question, and that under the circumstances, if it were necessary to do so, the bill would even now be amendable so as to conform to the proofs in the case.

The exceptions raising the question that there can be no parol sale among tenants in common we think are not relevant in the case in hand, as we do not recall any evidence of parol sales sought to be effected among the owners of the land. The rule by which a parol sale cannot be effected by tenants in common, inter se, does not prevent them from making such sales to outside parties, but even this is not a question, as we take it, in the case under consideration. Upon the argument of the case, it was contended on part of the exceptants' counsel that the proceedings have not been in conformity with the equity rules in such cases. We are not convinced, however, that there has been any irregularity in the record in this respect. On consideration therefore of the whole case, the exceptions are dismissed.

*Error assigned* was the decree of the court.

*John M. Greer,* with him *John B. Greer* and *Thos. H.*

*Greer*, for appellants.—An election to take land directed to be sold, in lieu of the proceeds is practically a purchase: Mellon v. Reed, 123 Pa. 1.

The reconversion must be by deed or some equivalent conveyance and Mary B. Wahl and Mrs. G. H. Harley being married, could not elect to take the land instead of the proceeds except by deed joined in by their husbands.

Under the will the heirs take title not by the will but by their own act. Their election to take the land is an appropriation of their interests under the will to the acquisition of the land as upon a purchase, and an equitable estate or title is thereby created in them which chancery will execute by compelling a conveyance. But until the act of election, the heirs have no estate or title which would be the proper subject of a lien either by judgment or by mortgage, or which could be taken in execution: Mellon v. Reed, 123 Pa. 1; Bailey v. Allegheny Nat. Bank, 104 Pa. 425; Horner's App., 56 Pa. 405.

*T. C. Campbell*, with him *James W. Hutchison*, for appellees.—The property directed to be sold by the will of C. A. McKinney upon the death of his wife was reconverted by the action of his children, among whom the proceeds of the sale were to be distributed: Brown's App., 27 Pa. 62; Howell v. Mellon, 189 Pa. 169; Emanuel's Est., 13 Pa. Superior Ct. 43; Rauch's Est., 21 Pa. Superior Ct. 60; Beatty v. Byers, 18 Pa. 105; Willing v. Peters, 7 Pa. 287; Beal v. Stehley, 21 Pa. 376; Bailey v. Nat. Bank, 104 Pa. 425.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1912:

We have carefully examined and considered the somewhat voluminous and complicated record in this case, and are of the opinion that the learned trial judge properly disposed of the case in his opinion of March 22, 1909, and subsequent opinions. The decree may well be affirmed on his opinions.

The controlling question is whether the real estate of

the decedent which, by his will, had been converted into personalty, had been reconverted by the persons beneficially interested. The facts found by the chancellor, fully warranted by the evidence, justified him in finding that there had been a reconversion and that the beneficiaries had elected to hold the real estate as such. While the intention to reconvert must clearly and unmistakably appear, yet a direct election is not necessary. Any act or acts which disclose plainly an intention to hold the real estate as such is sufficient. It would be difficult to find in any other case acts of the parties which show more plainly an intention to reconvert real estate directed by a testator to be sold. The heirs and legatees, the parties beneficially interested, took control of the real estate in December, 1888, the year following the death of the testator, and leased the premises for oil purposes. Subsequently they leased for oil and gas purposes, and issued pipe-line division orders for oil procured from the leases. In April, 1906, all the interested parties made a deed, granting a right of way to a railway company across the premises. In these several acts they necessarily treated the property as real estate, and thereby clearly disclosed an election to reconvert it to real estate. The learned judge committed no error in holding that such acts on the part of the beneficiaries, covering a period of eighteen years after the death of the testator, were an election to hold the property as land and not as personalty.

The judgments entered against some of the parties after the election to reconvert bound their interest in the real estate, and the sales on the judgments passed the title of those parties to the purchasers. The learned judge correctly held that the reconversion dated from April 7, 1906, and that judgments entered thereafter against the parties became a lien on the property.

There is no merit in the contention that the court below was without jurisdiction to entertain the bill for partition until the title of the parties had been determined in an action of ejectment. The question was recently before

this court, and it was there settled against the position of the present appellants: Cooley v. Houston, 229 Pa. 495. There, as here, the question of reconversion depended upon evidence in writing disclosing the intention of the parties, and it was held that, it being a question for the court, a chancellor in a suit in equity could determine it as well as a judge sitting in a court of law trying an action of ejectment.

The question raised by the appellants as to the sufficiency of the averments in the bill must be ruled against them. The objection now made was not raised until after the testimony had been given before the chancellor, and the facts found and a decree made by him. The parties treated the bill as if it contained all the necessary averments, and produced testimony to sustain and defeat the issue thus made. It is now too late for the appellants to complain of the insufficiency of the pleadings.

The decree is affirmed.