# Lloyd's Estate.

*Receipt—Payment for land—Evidence—Statute of frauds.*

1. A receipt is not evidence of a payment for an interest in land, where the paper itself contains nothing which identifies the demand to which it refers, and there is no evidence as to what it covers; and this is especially the case where the relation between the parties indicates that the sum, covered by it, might have been paid in settlement of an account between them for board and labor.

*Partition—Orphans' court—Tenants in common—Remainderman—Title—Ejectment.*

2. A petition to the orphans' court for partition is permissible where the petitioner is a tenant in common though a remainderman, and the respondent is the life tenant or his grantee.

3. Ordinarily, where a controversy is over a legal title as distinguished from an equitable one, a person not in possession or having the potential right thereto, cannot have a decree by the orphans' court for partition, until his rights have been determined by an action of ejectment, if a real and substantial contention as to his claim is shown by both the pleadings and the evidence presented.

4. Under such circumstances, further action will be stayed until the question involved can be determined in a court of law.

5. But if the pleaded reasons for refusing the partition are insufficient, or if, on the trial on the petition and answer, the question as to whether or not there is a disputed fact, turns exclusively on the interpretation of the writings, or if, upon the proof offered, a trial judge at law would be required to give binding instructions against the party seeking to have an issue awarded, the chancellor should forthwith proceed to final decree, despite claim of a lack of title in the petitioner.

*Partition —Adverse possession —Life tenant—Remainderman—Possession.*

6. During the continuance of a life estate, one holding in remainder is not bound to notice possession taken and continued by virtue of a conveyance from the life tenant.

7. In such case, a demand by the remainderman for possession and refusal by the grantee of the life tenant, cannot be made the basis of title by adverse possession against the remainderman who never had possession, and had no right of possession until the life tenancy ended.

*Wills—Conversion—Direction to sell—Appraisement—Right of heirs to accept at appraisement—Limitation to one or two of the heirs.*

8. Ordinarily, if a sale of real estate is directed by a will, a superadded permission giving to those entitled to take at law, the right to accept the property at an appraised value, will not change the rule that a conversion is effected; but if the right to accept is limited to one or two of the heirs, in preference to others, no conversion is worked.

9. Where, in such case, a deed is made, not by the executor, but by all the heirs except one, no conversion is effected, so as to defeat the claim of the heir not signing, to his interest in the land in question.

Argued October 8, 1924. Appeal, No. 88, Oct. T., 1924, by Melva Coal Company, from decree of O. C. Cambria Co., at Docket No. 1168, awarding partition in estate of Evan Lloyd, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition for partition. Before REED, P. J.
The opinion of the Supreme Court states the facts.
Partition awarded. Melva Coal Co. appealed.

*Error assigned* was decree, quoting record.

*P. J. Little,* for appellant.—The fact that other heirs joined in the deed is of no consequence, excepting that by it they receipted for the money coming to them, or, in other words, for their share in the estate: Horner's App., 56 Pa. 405; Hughey's App., 1 Grant 51.

The will worked an equitable conversion and there could have been no reconversion by which Mary Jane Flannigan or her son could acquire an interest in real estate: Neely v. Grantham, 58 Pa. 433; McClure's App., 72 Pa. 414; Evans' App., 63 Pa. 183; Miller v. Meetch, 8 Pa. 417.

The estate was vested in the executor and not in the heirs, and the sale was postponed for the benefit of the

widow: Brown's App., 27 Pa. 62; Dundas' App., 64 Pa. 325; Parkinson's App., 32 Pa. 455; Simpson v. Kelso, 8 Watts 247; Beatty v. Byers, 18 Pa. 105.

Postponement of the sale will not prevent a conversion: Bright's App., 100 Pa. 602; Roland v. Miller, 100 Pa. 47; Leiper v. Thomson, 60 Pa. 177.

The provisions in the will that the sons should take at the appraisement, if they desire, in no way defeats the conversion, and the sons became purchasers: Miller v. Com., 111 Pa. 321; Laird's App., 85 Pa. 339; Pyle's App., 102 Pa. 317.

The court has no right to order partition of an estate where the will works a conversion: Keim's Est., 201 Pa. 609; Fahnestock v. Fahnestock, 152 Pa. 56.

There being sufficient evidence of adverse possession to submit to a jury, the orphans' court cannot decree partition: Law v. Patterson, 1 W. & S. 184; Longwell v. Bentley, 23 Pa. 99; Bigley v. Jones, 114 Pa. 510.

Possession of land becomes adverse when a tenant in common sells the entire property by warranty deed followed by exclusive possession: Earle v. R. R., 270 Pa. 152; Bishop's Est., 200 Pa. 598; McMasters v. Carothers, 1 Pa. 324.

*Morgan W. Evans,* for appellee.—The will of Evan Lloyd did not work a conversion of his real estate: Schoen's Est., 274 Pa. 28; Brennan's Est., 277 Pa. 509; Lehman's App., 105 Pa. 128; Cooper's Est., 206 Pa. 628, 630; Davidson, Exrx., v. Bright, 267 Pa. 580, 583; Anewalt's App., 42 Pa. 414; Neely v. Grantham, 58 Pa. 433.

The direction to sell must not be coupled with a qualification as to a division of the property between the heirs, other than the law gives: Jones v. Caldwell, 97 Pa. 42.

The possession of a life tenant, by curtesy, is not adverse to the remainderman: McDonald v. Heylin, 4 Phila. 73; Stark v. Byers, 213 Pa. 101; Gernet v. Lynn, 31 Pa. 94; Stahl v. R. R., 262 Pa. 493.

OPINION BY MR. JUSTICE SADLER, November 24, 1924:

Evan Lloyd, the owner of two farms in Cambria County, died testate in 1860. He devised all of his real estate to the widow for life, or until remarriage,— which latter event subsequently occurred. In either case, the testator directed "my said executor to have my real estate appraised and if any two of my sons with the consent of the third, or one with the consent of the other two, shall agree to take said farms at the price appraised and pay their respective portions to all the other heirs [designating the terms of payment], and in case of failure to agree to take at the appraisement price, then I direct my executor aforesaid to expose my real estate aforesaid to sale and divide the proceeds among my children [two-thirds to his three sons, and one-third to three daughters, subject to a life interest in one-third for the widow]." Mrs. Lloyd did remarry, but no record of any appraisement of the real estate appears, or of any deed or deeds from the executor.

One of the farms, containing 153 acres, was conveyed on April 28, 1870, to a son, Benjamin, and in the grant the widow of the testator, his two brothers, and two of his sisters with their husbands, joined. Mary, the third daughter of testator, was then deceased, and her husband and his second wife were also parties, but the interest of the minor son of Mary, the present petitioner, was not represented. The latter, claiming the ownership of a remainder in the one-ninth of the property, representing his mother's share, conveyed in 1902 whatever claim he might have to a third party, who in turn deeded it to the heirs of Benjamin, the first-named grantee, and at the time receipted "in full of the amount due Mary Jane Flannigan [his deceased mother] from Benjamin Lloyd, who accepted the real estate under the last will and testament of Evan Lloyd, 22nd June, 1864." The record shows the grant made directly to him by the heirs at law, and not by the executor named in the will.

The second farm came into the possession of Owen
Rowland, husband of another daughter, by a deed bear-
ing the same date as that of Benjamin.  In it the widow
of testator, two sons and their wives, a daughter and her
husband, and the surviving and remarried husband of
Mary Jane, mother of the petitioner, joined.  The ac-
knowledgment of the third son appears, and probably
he executed the conveyance, though an examination of
the record fails to show his signature.  Whether he did,
or not, is immaterial in determining the question now
before us.  As to the one-ninth of which Mary Jane
would have been entitled, if living, her husband and his
second wife appear among the grantors, but again the
minor son, the present claimant, was not represented.
Appellant in the argument states that this property
first passed to a son, Abner, and through him to Row-
land, but the record does not bear out this assertion.
one Kemler became owner of the farm in question, and
he conveyed the coal rights, which have now come into
the hands of the respondents in this case, and one of
them, the Melva Coal Company, is the present appellant.
The title to the surface passed by will to Kemler's son,
who is also made a party.

This proceeding in partition was instituted in the
orphans' court by the son of Mary Jane, born in 1868,
the year of his mother's death, in assertion of his claim
to a remainder interest in one-ninth of the land devised
by his grandfather.  Her husband, as already noticed,
remarried, and joined with his second wife in the con-
veyance of the property here involved.  No guardian
executed the deed on behalf of the minor, who now
claims, insisting that there was transferred by the deed
only the estate by curtesy acquired by his father, and
that he is entitled to the remainder in the one-ninth
share upon his father's death, which occurred in 1924.

During his minority, petitioner resided with, and
worked for, his uncle, Rowland, the grantee named in
the deed of 1870.  Upon reaching age in 1889, he was

given $100, and signed a receipt "for all claim that I have against the said Owen Rowland and his heirs." This sum may have been paid in settlement of the account between them for board and labor, but the paper contains nothing which identifies the demand to which it refers, and there is no proof as to what it covers; in the absence of such evidence, neither judge nor jury could construe the paper to refer to the land asked to be divided. There is no presumption that it had any relation to the conveyance of nineteen years before, especially as petitioner made no claim to any interest in the realty, of which his grandfather died seized, until 1902, when his interest in the first tract, deeded to Benjamin, was transferred as already noted. At no time has the present claimant been in possession of any of the land covered by the grant to Rowland.

A petition to show cause why partition should not be awarded was presented to the orphans' court in 1922; such a course is permissible where the plaintiff is a tenant in common, though a remainderman, and the defendant is the life tenant or his grantee: Holmes v. Fulton, 193 Pa. 270; McDonald v. McDonald, 256 Pa. 304. The right to so order was opposed by respondents on the ground that petitioner was without title, because the land in question had been converted into personalty by the will of the grandfather, and the proceeds derived from the sales could alone be looked to for satisfaction of the share of anyone interested; and, further, that the present claim was barred because of an adverse possession in the defendants for many years.

It must be determined first whether the orphans' court has jurisdiction to award partition, in view of the dispute as to the ownership of any interest in the land. Ordinarily, where the controversy is over a legal title, as distinguished from an equitable one (Hayes's App., 123 Pa. 110, 132), a person not in possession, or having the potential right thereto, cannot obtain such a decree until his rights have been determined by an action in

ejectment (Eell's Est., 6 Pa. 457; Hayes's App., supra),
if a real and substantial contention as to his claim is
shown by both the pleadings and the evidence pre-
sented.   Under such circumstances, further action in
the orphans' court or court of equity, will be stayed until
the question involved can be determined in a court of
law: Earle v. D., L. & W. R. R. Co., 270 Pa. 152; Bish-
op's Est., 200 Pa. 598; Longwell v. Bentley, 23 Pa. 99;
Law v. Patterson, 1 W. & S. 184.   Perhaps some of the
earlier authorities went even further than this; but it
must now be considered settled that if the pleaded reasons
for refusing the partition are insufficient, or if, on the
trial upon the petition or bill and answer, the question
as to whether or not there is a disputed fact, requiring
determination by a jury, turns exclusively on the
interpretation of writings, or if it appears that, assum-
ing the truth of the testimony produced, a trial judge,
at law, would be required to give binding instructions
against the party seeking to have an issue awarded, in
either such event the chancellor should forthwith pro-
ceed to final decree, despite a claim of a lack of title in
plaintiff or petitioner (Welch's App., 126 Pa. 297; Mc-
Mahon's Est., 211 Pa. 292; Cooley v. Houston, 229 Pa.
495; Sanders's Est., 41 Pa. Superior Ct. 77), and this
is true whether based on an alleged conversion (Bran-
don v. McKinney, 233 Pa. 481), or adverse possession:
McMahon's Est., supra.

In the present instance, appellant contends that, upon
the evidence produced, it is entitled to a stay, until
its claim is decided at law, for two reasons:  (1)
Because of the receipt of 1889 (already referred to, and
needing no further consideration):  (2) Because its
claim of "open, adverse, notorious, hostile, continued
and peaceable possession for more than twenty-one years
last past," was sustained by the evidence of two wit-
nesses (each of whom was probably incompetent, though
it is not necessary to decide that question).   Their testi-
mony was to the effect that, on or about May 8, 1902,

appellee and his counsel called upon John Kemler (through whom appellant claims title), then in possession of the farm, and in the course of the conversation, when Kemler was told of appellee's claim, he "refused to recognize any rights that [petitioner]......claimed in the property......and told him, if he thought he had anything, to go ahead and get it, or words to that effect." At that time Kemler was entitled to have possession of the land, because he owned the life estate of appellee's father, and the latter was still alive, and hence it was not possible for appellee to legally secure it. Presumptively, Kemler's claim, as then made, was because of his record title, and not adverse to it; but, if we assume the contrary, appellant is not helped. The evidence does not disclose any previous denial of appellee's ownership, and if this be considered one, and it also be held effective, although appellee could not assert his right until his father's death, the supposed adverse title never did ripen under the statute of limitations, for these proceedings were begun on March 17, 1922, within twenty years of that conversation.

Moreover, as has been already intimated, appellee was not barred because he was not entitled to possession until 1924, when his father died, and was in no position to assert his claim, if any existed, until the preceding estate had ended, and, therefore, the statute could not be applied because of failure to insist upon his ownership at an earlier date. During the continuance of the life estate, one holding in remainder is not bound to notice possession taken and continued by virtue of a conveyance from the life tenant: Stahl v. Buffalo R. & P. Ry. Co., 262 Pa. 493; Gernet v. Lynn, 31 Pa. 94. It was therefore apparent from the record that the defense proposed could not have been sustained in an ejectment proceeding, since it would have been the duty of the court, on such trial, to give binding instructions for the plaintiff, and hence a stay of proceedings to permit a useless hearing was not required.

The final contention rested on the allegation of lack of title in plaintiff because of an asserted equitable conversion of the real estate by the will of the grandfather. Here also the validity of the alleged defense must be determined solely by a consideration of writings to be construed by the court. By the will of Evan Lloyd, after the death or remarriage of the mother, the land was directed to be valued, and "any two of my sons, with the consent of the third, or one with the consent of the other two [authorized] to take said farms at the price appraised." It was only in case none of the sons concluded to take the property that a sale was to be had. Whenever there is a positive direction to sell irrespective of any contingency, and independent of any discretion, a conversion into personalty of the estate or interest in the realty directed to be sold, as of the date of the death of the testator, is undoubtedly worked (Cooper's Est., 206 Pa. 628), and the mere fact that the sale is not to take effect until the termination of some trust or life estate,—as to which the direction to sell, and hence the conversion, does not apply,—will not alter the principle: Kessler's Est., 264 Pa. 422; Dull's Est., 222 Pa. 208. Ordinarily, if a sale is directed, a superadded permission, giving, to those entitled to take, at law, the right to accept the property at an appraised value, will not change this rule of construction: Jones v. Caldwell, 97 Pa. 42; Pyle's App., 102 Pa. 317; Laird's App., 85 Pa. 339; Miller v. Com., 111 Pa. 321. On the other hand (Neely v. Grantham, 58 Pa. 433), if the right to accept is limited to one or two of the heirs in preference to others, as it is in the instant case, a different conclusion is reached. This distinction between the two classes of cases is drawn in Jones v. Caldwell, 97 Pa. 42, in discussing Neely v. Grantham, supra, where the situation was the same as that found here, and in which four of the five judges held that no conversion was worked. No modification of the principle there laid down is to be found in our subsequent decisions. So far as the record

shows, there was no actual conversion of the realty into personalty, the deed in question being executed by the heirs at law and not the executor. In an action of ejectment it would necessarily be for the court to declare the legal effect of the will, and it would be a useless thing to insist on a preliminary trial on the law side where, as here, there would arise a duty to instruct that no conversion was worked. The matter can as well be disposed of by the orphans' court on the petition and answer and evidence submitted: Brandon v. McKinney, 233 Pa. 481.

It follows from what has been said that there was no substantial dispute requiring adjudication in an action of ejectment, since the defense interposed depended solely on legal questions, both of which were properly decided by the orphans' court. Under the circumstances stated, it had jurisdiction to award the partition, and hence its decree should be sustained.

The decree is affirmed, and this appeal is dismissed, at the cost of appellant.